REPUBLIC INSURANCE COMPANY
and Southwest Adjusting Services,
Inc., Petitioners,

v.

Linda H. STOKER and John
Stoker, Respondents.

No. 94–0110.

Supreme Court of Texas.

Argued Oct. 19, 1994.

Decided July 7, 1995.

Joseph L. Hood, Jeffrey S. Alley, Eric M. Brittain, Stephen B. Tatem, Jr., El Paso, for petitioners.

Terry Bassham, Joel Fry, El Paso, for respondents.

ENOCH, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HIGHTOWER, HECHT, CORNYN, and OWEN, Justices, join.

This case presents the question whether an insurer breaches its duty of good faith and fair dealing to its insured if it denies a claim for an invalid reason when there was at the time a valid reason for denial. The trial court granted summary judgment against the insureds on their policy claim holding that there was no coverage, but rendered judgment on the jury verdict for the insureds on their extra-contractual claims. The court of appeals affirmed, concluding that a finding of no liability on the policy action does not, as a matter of law, defeat an insured's extra-contractual claim. 867 S.W.2d 74. The court rested its decision on *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566 (Tex.1990). Because the court of appeals misapprehends *Viles,* we reverse the judgment of the court of appeals and render judgment that the Stokers take nothing.

This case arises out of a multiple car accident in which the Stokers' automobile struck the rear end of another vehicle. It is undisputed that an unidentified pickup truck dropped a load of furniture on the highway, causing a chain reaction collision. Also, it is undisputed that this truck was not struck by any of the vehicles involved in the collision. The Stokers had no collision insurance and, therefore, submitted a claim to recover under their uninsured/underinsured vehicle coverage with Republic.

Republic hired Southwest to investigate the Stokers' claim. Southwest recommended that the uninsured motorist claim be denied because it concluded that Mrs. Stoker, who was the driver, was more than fifty percent at fault in causing the accident. A Republic senior claims examiner confirmed Southwest's decision. Mrs. Stoker acknowledged at the trial of her bad faith claim that fault is an issue in recovering under the uninsured motorist coverage.

The Stokers' policy provided uninsured motorist coverage for damages caused by an unidentified hit and run vehicle only if the vehicle hit the insureds' car. The language of the policy is in accord with the requirements of the Insurance Code regarding uninsured motorist coverage. TEX.INS.CODE art. 5.06–1(2)(d) (in order to recover under uninsured motorist coverage "actual physical contact must have occurred."). Republic initially did not rely on the lack of physical contact with the pickup as a reason for denying the Stokers' claim.

Following Republic's denial of the uninsured motorist claim, the Stokers sued for breach of the insurance contract, breach of the duty of good faith and fair dealing, and violations of the Deceptive Trade Practices Act and article 21.21 of the Insurance Code. The Stokers predicated all their allegations against Republic and Southwest on the fact that the companies gave an invalid reason for denial of the Stokers' claim—Mrs. Stoker's alleged fault. Republic and Southwest responded with a motion for summary judgment, asserting that because there was no physical contact there was no coverage under the policy, and consequently, the Stokers had no contractual and extra-contractual claims as a matter of law.

The trial court granted summary judgment on the contract issue. However, it submitted the balance of the case to a jury that found that Republic and Southwest had breached their duty of good faith and fair dealing and violated the DTPA and article 21.21 of the Insurance Code. The statutory violations were premised solely on the Stokers' bad faith claim. The trial court rendered judgment for the Stokers on the verdict. The court of appeals affirmed both the summary

judgment on the policy claim and the judgment for extra-contractual damages. 867 S.W.2d at 80.

The Stokers have not perfected an appeal to this Court of that portion of the court of appeals' judgment affirming summary judgment on their policy claim. We therefore take it as established that the uninsured/underinsured motorist coverage in the Stokers' policy does not cover their claim. Additionally, Southwest does not contend here that because it was merely Republic's agent, it owed the Stokers no duty of good faith and fair dealing. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695 (Tex.1994). Nor do the Stokers contend that they were damaged by any delay in the processing of their claim by Republic. Therefore, the only issue we address is whether the defendants are liable to the Stokers for denying their claim for an incorrect reason—the accident was mostly Mrs. Stoker's fault—when there was a correct reason for denial which the defendants did not give the Stokers—the incident was not covered by the policy. We note that the issue of Mrs. Stoker's fault has never been resolved by a jury, but for purposes of this opinion we will assume that Republic was incorrect in its evaluation of Mrs. Stoker's fault.

■ An insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). A breach of the duty of good faith and fair dealing is established when: (1) there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy and (2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex.1988). "The first element of this test requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits." *Id.* This assures that a carrier "will not be subject to liability for an erroneous denial of a claim," *id.*, as long as a reasonable basis for denial of the claim exists. *Lyons v. Millers*

*Casualty Ins. Co. of Texas*, 866 S.W.2d 597, 600 (Tex.1993).

■ In affirming the trial court's judgment, the court of appeals cited to our decision in *Viles*, 788 S.W.2d 566. *Viles*, however, does not support affirmance. In *Viles*, the insurers investigated and denied the claim based on the ground that the property damage claimed to be covered actually predated coverage. *Id.* at 566–67. The insurer denied the claim before the Viles submitted a proof of loss and before their time for doing so had expired. After the claim was denied, the Viles did not submit a proof of loss because it would have been futile to do so. At trial, the evidence established, contrary to the insurers' position, that the damage existing before coverage had already been repaired. *Id.* at 567 n. 2. Thus, the claim was improperly denied. Nevertheless, the insurers attempted to justify denial of the claim based on the Viles' failure to file a timely proof of loss. *Id.* We rejected this argument stating: "The record shows ... that the insurance companies denied the Viles' claim before the proof of loss form was due. Hence, the failure to file that form ... could not have been a basis for denial." *Id.* at 567–568.

We stated in *Viles*: "Whether there is a reasonable basis for denial [of a claim] must be judged by the facts before the insurer at the time the claim was denied." *Id.* at 567. This statement, does not support the Stokers' claim in this case. Unlike the situation in *Viles*, the Stokers' accident was never covered by their policy because there was no collision with the pickup truck. The facts compelling denial of the Stokers' claim were in existence at the time of the denial. Republic and Southwest's reliance on a different, perhaps erroneous, reason for denying coverage is not dispositive. What is dispositive is whether, based upon the facts existing at the time of the denial, a reasonable insurer would have denied the claim. *Aranda*, 748 S.W.2d at 213.

An argument has been made that because a policy claim is independent of a bad faith claim, an insured may recover for a bad faith denial of a claim even if the claim is not covered by the policy. We accept the prem-

ise of the argument—that a policy claim is independent of a bad faith claim. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex.1994). The asserted conclusion, however, does not necessarily follow. Several cases have been cited to us as support for this conclusion, but none of the cases cited holds an insurer liable for denying a claim not covered by the policy.[1] As we have noted, one element of a bad faith claim is an absence of a reasonable basis for denying or delaying payment of benefits. *Arnold,* 725 S.W.2d at 167; *Aranda,* 748 S.W.2d at 213; *Viles,* 788 S.W.2d at 568. Republic did not fail to determine whether there was a reasonable basis for denying the Stokers' claim; its decision was timely, it simply made the right decision for the wrong reason.

It is further argued that the Stokers should have been entitled to rely on Republic's reason for denying their claim in deciding whether to file suit. The Stokers were no more persuaded by the coverage language than they were by Republic's statement to them that Mrs. Stoker was mostly to blame for the accident. They vigorously contested both reasons for denial of their claim. The Stokers cannot preclude Republic from relying on a reason for denying their claim that existed at the time, even if it was not the reason Republic gave.

As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered. *See e.g., O'Malley v. United States Fidelity & Guar. Co.,* 776 F.2d 494, 500 (5th Cir.1985) (noting that no Mississippi case has ever allowed bad faith recovery for the insured without first establishing liability under the policy); *Gilbert v. Congress Life Ins. Co.,* 646 So.2d 592, 593 (Ala.1994) (plaintiff bears the burden of proving a breach of contract by the defendant); *Reuter v. State Farm Mut. Auto. Ins. Co., Inc.,* 469 N.W.2d 250, 253 (Iowa 1991) ("a bad faith failure to pay the insured when the insured event occurs . . . may subject the insurer to tort liability"); *Wittmer v. Jones,* 864 S.W.2d 885,

890 (Ky.1993) (noting that in order to establish a tort action for bad faith the insured must first prove that the insurer was obligated to pay under the policy); *Pemberton v. Farmers Ins. Exchange,* 109 Nev. 789, 858 P.2d 380, 382 (1993) ("An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy."); *Bartlett v. John Hancock Mut. Life Ins. Co.,* 538 A.2d 997, 1000 (R.I.1988) ("there can be no cause of action for an insurer's bad faith refusal to pay a claim until the insured first establishes that the insurer breached its duty under the contract of insurance"); *see also* OSTRAGER & NEWMAN, INSURANCE COVERAGE DISPUTES § 12.01 at 503 (7th ed. 1994) ("The determination of whether an insurer acted in bad faith generally requires as a predicate a determination that coverage exists for the loss in question."); 15A RHODES, COUCH ON INSURANCE LAW 2d § 58:1 at 249 (Rev. ed. 1983) ("As a general rule, there may be no extra-contractual recovery where the insured is not entitled to benefits under the contract of insurance which establishes the duties sought to be sued upon."). We do not exclude, however, the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim. *See Aranda,* 748 S.W.2d at 214. Nor should we be understood as retreating from the established principles regarding the duty of an insurer to timely investigate its insureds' claims. These circumstances are not present in this case.

The Stokers' claim fails because, as a matter of law, they cannot meet the first prong of the *Aranda* test. As all the Stokers' causes of action are predicated on their bad faith allegation, they are not entitled to recover against defendants. Accordingly, the judgment of the court of appeals in favor of the Stokers is reversed, and judgment is rendered that the Stokers take nothing.

SPECTOR, Justice, joined by GAMMAGE, Justice, concurring.

An insurance company has a duty to treat its policyholders fairly. This duty requires

---

1. Our attention has been particularly called to *Deese v. State Farm,* 838 P.2d 1265, 838 P.2d 1265 (1992). The insurance company in *Deese* did not deny coverage. The dispute was whether portions of the medical bills were not reasonable and therefore not compensable. *Id.* 838 P.2d at 1266–67.

the company to handle every claim in a responsible manner, even if coverage is unclear. When the company instead denies a claim out of hand, without conducting any investigation to determine whether there is a reasonable basis for denial, it should be held responsible for any damages caused by its bad faith.

In the present case, there is no evidence that the insurer's mishandling of the claim caused any damages to the insured. For that reason, I join in the Court's judgment. I strongly disagree, however, with the language in the majority opinion suggesting that bad faith recovery may be dependent on the insurer's contractual liability. Fine print in an insurance policy should not excuse an insurer from liability for damages caused by its slipshod handling of a claim.

## I.

The evidence in this case supports the jury's finding that Republic Insurance Company breached its duty of good faith and fair dealing by improperly investigating Linda Stoker's claim. It does not, however, provide any support for the lower courts' determination that Republic's bad faith caused damages to the Stokers.

The three-car accident giving rise to the insurance claim occurred shortly after a truckload of furniture spilled out onto the highway. The driver of the truck did not stop, and was never identified. The Department of Public Safety officer who investigated the accident concluded in his report that the accident was caused by the unknown driver's failure to secure the load of furniture.

Stoker's car was damaged in the accident, and she submitted a claim to Republic for uninsured motorist coverage under her policy. Republic's adjuster, Abraham Ponce, interviewed Stoker and looked at photographs she provided. Weeks later, after Stoker had repeatedly inquired as to the status of her claim, Ponce denied the claim solely on the ground that Stoker was more than fifty percent at fault in causing the accident.

At the time he denied the claim, Ponce had not received or reviewed the DPS accident report, spoken to the DPS officer, or visited the scene. Nor had he interviewed either of the other two drivers involved in the accident. Nor had he interviewed Stoker's daughter, who was riding in the car at the time of the accident, or Stoker's husband, who was driving immediately behind Stoker when the accident occurred. Evidently, Ponce had not even read Republic's own insurance policy.

Months later, Republic's Senior Claims Examiner confirmed by letter the company's decision to deny Stoker's claim. The letter again indicated that coverage was not available because Stoker was at fault.

After Stoker brought this suit, Republic offered a completely different justification for its denial of her claim: namely, that there was no direct contact between Stoker's car and the truck that dumped the furniture. Based on this new defense, the trial court granted Republic's motion for partial summary judgment on Stoker's breach of contract claim. The case then proceeded to trial on her other claims, including bad faith.

At trial, the jury found that Republic had breached its duty of good faith and fair dealing and violated the Deceptive Trade Practices Act and article 21.21 of the Insurance Code. The jury also awarded the Stokers $1,975 for the reasonable and necessary costs of repairing their vehicle, and awarded Linda Stoker $5,000 for her mental anguish. The trial court rendered judgment on the jury verdict, and the court of appeals affirmed. 867 S.W.2d 74.

Republic and Southwest now argue that there is no evidence that the manner in which they investigated the claim was a proximate cause of damages to the Stokers. I agree.

The investigation of the claim clearly did not cause the damages to the Stokers' vehicle; the Stokers would have incurred those same damages even if their claim had been investigated properly. With regard to Linda Stoker's mental anguish, the entire proof consists of the following testimony:

Q [by the Stokers' attorney]: What was your reaction to that denial?

A [by Linda Stoker]: I was very upset.

Q: Why?

A: Because I felt like they were obligated to pay for the repairs to my car.

This exchange does not rise to the level of any evidence of compensable mental anguish. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434 (Tex.1995). Thus, absent injury attributable to the conduct of Republic and Southwest, the Stokers' claim must fail.

The majority could have chosen to resolve the claim on this simple basis under existing law.[1] Instead, though, the majority has chosen to continue chipping away at the duty of good faith. Under the majority's writing, even if there had been evidence of damages, the Stokers could not recover for bad faith because a reasonable insurer under similar circumstances would have denied the Stokers' claim. Supra at 340. In other words, even if an insurer completely fails to investigate a claim, or provides misleading information to deter the insured, it may still escape liability for bad faith by finding some reasonable basis for denying the claim sometime before trial.

## II.

A bad faith claim is not a claim for breach of contract; rather, it is based on a tort duty imposed by law. *Chitsey v. National Lloyds Ins. Co.*, 738 S.W.2d 641, 643 n. 1 (Tex.1987) (Gonzalez, J., writing for a unanimous Court). The majority today alters this basic principle by making the Stokers' bad faith recovery dependent on their claim for breach of contract. In thus recasting the bad faith claim, the majority adopts a view that completely disregards the relationship between an insurance company and its insureds.

The special nature of this relationship is what led this Court to impose a duty of good faith and fair dealing in the first place. *See Arnold v. National County Mut. Fire Ins.*

*Co.*, 725 S.W.2d 165, 167 (Tex.1987). In *Arnold*, we identified various aspects of the relationship that leave insureds in a vulnerable position: the unequal bargaining power of the parties; the nature of insurance contracts that "would allow unscrupulous insurers to take advantage of their insured's misfortunes in bargaining for settlement or resolution of their claims"; and the insurance company's "exclusive control over the evaluation, processing and denial of claims." *Id.* For these reasons, we recognized a duty arising from the "special relationship" of the parties—not from the contract itself. *Id.*

Because the duty of good faith and fair dealing arises from the relationship between the parties, rather than the terms of the contract, a breach of the duty does not depend on a breach of the contract's terms. The language of *Arnold* makes plain that an insurer may violate its duty of good faith and fair dealing, even when there is some reasonable basis for denial of a claim, if there is "a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay." 725 S.W.2d at 167. In other words, the recovery is allowed not only for failure to pay, but also for failure to *investigate*. All members of the Court were in agreement on this issue; even the concurring opinion by Justice Gonzalez stated that recovery should be permitted when "the insurer failed to determine whether there was any reasonable basis for denial or delay." 725 S.W.2d at 168.

This Court reiterated this view just five years ago. *See Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex.1990). Because the duty recognized in *Arnold* emanates "not from the terms of the contract, but from an obligation imposed in law," we held that a breach of the duty "will give rise to a cause of action in tort that is separate

---

1. During oral argument on this cause, Petitioners' counsel agreed that the damages issue is dispositive:

    JUSTICE DOGGETT: ... [W]ithout either disapproving, overruling, or qualifying *Viles* or *Aranda*, can your client not prevail in this case solely on the basis that there's no evidence of damages?

    ANSWER: Well, I think that—clearly that's one of the points we've raised, Justice Doggett.

    JUSTICE DOGGETT: You can get full and complete relief here on that basis, can't you?

    ANSWER: Absolutely, because there's no distinct loss flowing from the acts of bad faith.

    Oral argument of Joseph L. Hood, Counsel for Petitioners Republic Insurance Co. and Southwest Adjusting Services, October 19, 1994.

from any cause of action for breach of the underlying insurance contract." *Id.* Additionally, in describing the tort duty, we expressly recognized a duty to investigate:

> The "special relationship" between the insured and insurer imposes on the insurer a duty to investigate claims thoroughly and in good faith, and to deny those claims only after an investigation reveals there is a reasonable basis to do so.

*Id.* at 568. This language, like the language of *Arnold,* makes plain that an insurer may be held liable for failure to conduct an adequate investigation—even if the claim ultimately proved to be invalid.

This Court made a similar point less than one year-ago, when we once again noted that a bad faith action "is separate from any cause of action for breach of the underlying insurance contract." *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex.1994) (quoting *Viles,* 788 S.W.2d at 567). We specifically held that a lack of coverage would not preclude recovery for bad faith:

> We do agree ... that "[C]laims for insurance contract coverage are distinct from those in tort for bad faith; resolution of one does not determine the other."

*Moriel,* 879 S.W.2d at 18 n. 8 (quoting *id.,* 879 S.W.2d at 40 (Doggett, J., dissenting)). We also quoted with approval language stating that "[i]ndifference to facts or *failure to investigate* are sufficient to establish the tort of bad faith." *Id.,* 879 S.W.2d at 18 (emphasis added) (quoting *Rawlings v. Apodaca,* 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986)). *See also First Texas Savings Ass'n v. Reliance Ins. Co.,* 950 F.2d 1171, 1179 (5th Cir.1992) (Reavley, J.) (under Texas law, duty of good faith and fair dealing is imposed "independent of the duties under the policy itself").

Courts in other jurisdictions have likewise held that recovery for bad faith does not depend on a breach of the insurance contract. In an opinion quoted at length in *Moriel,* 879 S.W.2d at 18–19, the Supreme Court of Arizona explained this rule as follows:

> [T]he insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured.

*Rawlings v. Apodaca,* 151 Ariz. at 154, 726 P.2d at 570. For this reason, the court allowed recovery for bad faith even though the insurer had not breached the terms of the insurance contract. *Id.* at 157, 726 P.2d at 573; *see also Deese v. State Farm,* 172 Ariz. 504, 509, 838 P.2d 1265, 1270 (1992) (same holding). The Supreme Court of Wyoming has applied similar reasoning:

> [T]he duty of good faith and fair dealing emanates from the special relationship of the parties to the insurance contract, not from the express or implied provisions contained in the contract. Therefore, it is the conduct of one party toward the other that is proscribed by the duty, even if such conduct is not elevated by the terms and provisions of the insurance policy to a contractual obligation.

*Hatch v. State Farm Fire and Cas. Co.,* 842 P.2d 1089, 1099 (Wyo.1992); *see also State Farm Mut. Auto. Ins. Co. v. Shrader,* 882 P.2d 813, 828 (Wyo.1994) ("the insured does not need to prevail on the contract claim to prevail on the claim for breach of the duty of good faith and fair dealing"). Courts in many other jurisdictions agree. *See, e.g., Opperman v. Nationwide Mut. Fire Ins. Co.,* 515 So.2d 263, 267 (Fla.Dist.Ct.App.1987) (duty of good faith and fair dealing is "independent of any contractual obligation"), *review denied,* 523 So.2d 578 (Fla.1988); *White v. Unigard Mut. Ins. Co.,* 112 Idaho 94, 730 P.2d 1014 (1986) ("An action in tort provides a remedy for harm done to insureds though no breach of an express contractual covenant has occurred and where contract damages fail to adequately compensate insureds."); *Robinson v. North Carolina Farm Bureau Ins. Co.,* 86 N.C.App. 44, 356 S.E.2d 392 (1987) (insurer's compliance with policy does not preclude action for bad faith); *Bullet Trucking, Inc. v. Glen Falls Ins. Co.,* 84 Ohio App.3d 327, 333–34, 616 N.E.2d 1123, 1127 (1992) ("the tort of bad faith is an independent claim which does not necessarily rely on a breach of contract claim for its existence"); *see generally* 16A APPLEMAN, INSURANCE LAW AND PRACTICE § 8878.25 (1994 supp.). The principle underlying all of these cases is simple: the duty of good faith and fair dealing is

independent of the insurer's contractual obligations.[2]

## III.

This Court's previous decisions served to encourage insurers to handle all claims in a responsible manner. Today's decision will encourage a different sort of conduct: it allows an insurer to deny a claim for any reason that comes to mind—without any investigation at all—as long as the insurer eventually finds some valid basis for denial.

The United States Supreme Court recently rejected a comparable effort to allow wrongdoers to escape liability for their conduct. *See McKennon v. Nashville Banner Publishing Co.,* —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). In *McKennon,* the Supreme Court unanimously held that an employer could not avoid liability under the Age Discrimination in Employment Act of 1967 (ADEA) by relying on evidence acquired *after* the employee was wrongfully discharged. The Court reasoned that a private litigant who seeks redress "vindicates both the deterrence and the compensation objectives of the ADEA." —— U.S. at ——, 115 S.Ct. at 884. Thus, even when there is "after-acquired evidence of wrongdoing that would have led to termination on legitimate grounds had the employer known about it," *id.* at ——, 115 S.Ct. at 886, some measure of recovery is essential. An absolute rule barring any recovery, the Court recognized, "would undermine the ADEA's objectives." *Id.*

I would apply a similar analysis here. When an insurance company defends its misconduct on the basis of information discovered after the fact, an absolute rule barring any recovery undermines the objectives of the duty of good faith and fair dealing. The discovery of such information simply does not excuse the mishandling of the claim:

Once the bad faith has occurred, once the duty to use good faith in considering claims has been breached, the insurance company cannot later seek to justify its denial by gathering information which it should have had in the first place.

*Aetna Life Ins. Co. v. Lavoie,* 505 So.2d 1050, 1053 (Ala.1987).

In the present case, Republic Insurance Company breached its duty by mishandling the Stokers' claim, and its belated discovery of fine print in the policy should not immunize the company from all liability. I would adhere to existing law by holding Republic responsible for any damages caused by its misconduct. Because the present record contains no evidence of such damages, I join in the Court's judgment; but I do not join in the majority's unnecessary and unfortunate writing constricting the future recovery of bad faith damages.

---

2. The majority asserts that "none of the cases cited holds an insurer liable for denying a claim not covered by the policy." *Supra* at 341. This is simply incorrect. For example, in *Deese,* an insured sought medical benefits that State Farm claimed were "not compensable under the terms of the insurance contract." 172 Ariz. at 506, 838 P.2d at 1267. The jury found that State Farm had not breached the contract, but that it had acted in bad faith. The court of appeals, in an opinion remarkably similar to the majority's opinion today, held that a breach of contract is a prerequisite to recovery for bad faith. *Deese v. State Farm,* 168 Ariz. 337, 340, 813 P.2d 318, 321 (App.1991). The Supreme Court of Arizona reversed, holding that an insured need not prevail on a contract claim in order to prevail on a bad faith claim. 172 Ariz. at 509, 838 P.2d at 1270. The court recognized that "security from financial loss is a primary goal motivating the purchase of insurance," but explained that "the insured also is entitled to receive the additional security of knowing that she will be dealt with fairly and in good faith." *Id.* at 508, 838 P.2d at 1269.